**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PATRICK CHRISMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 06 C 5952** |
| **v.** | ) | |
| | ) | **Magistrate Judge Morton Denlow** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This case comes before the Court on Plaintiff's motion to reverse the final decision of the Commissioner of Social Security, and on Defendant's cross-motion for summary judgment. Plaintiff, Patrick Chrisman ("Claimant"), challenges the decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("Commissioner"),[1] claiming that his denial of Claimant's request for Social Security Disability Insurance Benefits ("DIB") should be reversed or remanded because the Administrative Law Judge ("ALJ"): (1) ignored credible testimony from the Claimant regarding his limitations; (2) ignored credible testimony from the Vocational Expert ("VE"); and (3) wrongly concluded that the evidence supports a residual functional capacity ("RFC") for light work with specific limitations, as opposed to sedentary work. For the reasons stated below, the Court denies Claimant's motion, grants the Commissioner's motion, and affirms the ALJ's decision.

## I. BACKGROUND FACTS

---

[1] Pursuant to Fed. R. Civ. P. 26(d)(1), the Court substitutes Michael J. Astrue for Defendant Jo Anne B. Barnhart, the former Commissioner of Social Security.

## A. PROCEDURAL HISTORY

Claimant filed an application for DIB on September 1, 2004, alleging that he became disabled on June 4, 2004. R. 51-61. He later amended his alleged onset date to December 11, 2004, the date on which he turned fifty years old. R. 50. Claimant's application for DIB was denied initially and upon reconsideration. R. 21-25, 29-32. After Claimant requested a hearing before an ALJ, R. 33, his application was assigned to ALJ Robert M. Senander, R. 43-49. The ALJ held a hearing on Claimant's application on February 28, 2006, during which Claimant and VE James Breen testified. R. 224-49. Claimant was represented by counsel at the hearing. R. 224.

On March 31, 2006, the ALJ issued his decision, and determined that Claimant was not disabled. R. 8-14. On September 1, 2006, the Appeals Council denied Claimant's request for review of the ALJ's decision. R. 4-6.

Claimant now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The parties have consented to this Court's jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c)(1). The Court conducted an oral argument on April 30, 2006. Claimant's alleged impairments are: disability secondary to history of lung cancer, paroxysmal[2] supraventricular tachycardia,[3] and arthritis[4] of the knees.

## B. HEARING TESTIMONY – February 28, 2006

---

[2] Paroxysm is defined as "[a] sudden onset of a symptom or disease, especially one with recurrent manifestations such as the chills and rigor of malaria." Stedman's Medical Dictionary 1427 (28th ed., 2006).

[3] "[R]apid heart rate due to a pacemaker anywhere above the ventricular level, *i.e.*, sinus node, atrium, atrioventricular junction . . . ." Stedman's at 1931.

[4] "Inflammation of a joint or a state characterized by inflammation of joints." Stedman's at 159.

**1. Claimant's Testimony**

Claimant was fifty-one years old at the time of the hearing.  R. 227.  He lives with his wife in Lombard, Illinois.  *Id.*  Claimant is a high school graduate.  R. 228.  From 1978 through June 4, 2004, Claimant worked as a pipe fitter.  R. 230.  He was laid off on June 4, 2004, and has not worked since.  R. 229.  His typical day consists of reading, watching television, and doing light housework.  R. 240.

At the hearing, Claimant's attorney took the position that Claimant was limited to sedentary work because of his breathing problems.  R. 231.  At the oral argument before this Court, Claimant's counsel acknowledged that Claimant's pulmonary tests support an ability to perform light work.  Claimant testified that he began treatment for lung cancer in 2001.  R. 230.  Though his treatment was successful and the cancer has not returned, Claimant explained how it has affected his ability to breathe.  R. 231.  Claimant testified that it is a "common daily occurrence" for him to be "out of breath" after exertion.  R. 232.  He experiences shortness of breath after routine activities such as pushing his garbage container to the curb, and going up and down flights of stairs.  R. 231-32.  Though Claimant is able to walk up the twelve stairs in his house by using the railing, he gets "winded" if he does it in a hurry.  R. 232.

Claimant is able to do light chores such as dusting and sweeping, but he cannot mow his lawn or shovel snow.  R. 235.  Furthermore, while Claimant is able to walk to the grocery store with his wife, he can only walk two blocks before he must stop for a minute or two to

catch his breath.  R. 236.

Claimant returned to work as a pipe fitter in 2002 following his treatment for cancer, but testified that there were a number of things he was unable to do because of his limitations.  R. 242-43.  He was unable to carry certain objects because of their weight, and he needed to sit and catch his breath after going up any staircases.  R. 243.  In addition, Claimant testified that his limitations only got worse as he continued working.  *Id.*  Though he never missed a day of work, he was exhausted at the end of each day, and would nap for several hours when he got home.  *Id.*

In addition to his complications from cancer, Claimant also has a history of knee and shoulder problems.  He underwent operations on his left knee in 1990 and 1991, and had his right knee operated on in 2005 to repair torn ligaments.  R. 240-41.  According to Claimant, his orthopedic doctor told him to be careful using stairs and to avoid twisting motions because of his knees.  R. 241.  Claimant testified that he experiences knee pain and discomfort on a daily basis.  *Id.*  He testified as follows regarding his ability to stand:

> Q:      Now you have any problems just standing in one spot?
>
> A:      I can stand for probably a half hour without having too much discomfort.
>
> Q:      And then you've got to sit?
>
> A:      Preferably.

R. 239.  Claimant has also had surgery on both his right and left shoulders.  R. 239, 242.  He testified that he still has pain in his shoulders, and that he lacks full range of motion in both

arms. R. 242. Claimant treats his joint pain by taking 800 milligrams of ibuprofen. R. 244. He testified that he also takes the ibuprofen when he knows he will be sitting for a long period of time. *Id.*

Finally, Claimant testified about his treatment for supraventricular tachycardia. R. 232-34. According to Claimant, this condition was unrelated to his lung cancer, but caused his heart to beat rapidly without warning and left him short of breath. R. 233-34. He suffered three occurrences in 2005, and several in previous years. R. 233. Claimant testified that he went to the emergency room for each occurrence. R. 233-34. In December 2005, Claimant underwent radiofrequency catheter ablation[5] to fix the condition rather than continue to take medication. *Id.*

In addition to his physical limitations, Claimant also testified that he suffers from depression and anger management issues. R. 244. He testified that he takes the prescription medication Zoloft for these problems, and that the medication has never interfered with his ability to work. *Id.*

### 2. James Breen – Vocational Expert

James Breen, a VE, testified regarding Claimant's past relevant work and existing jobs in the economy that might be suitable for Claimant. R. 245-49. The VE characterized Claimant's past work as a pipe fitter as being in the medium range of skilled work and as

---

[5] Electrode catheter ablation is defined as "a method of ablating the site of origin of arrhythmias whereby high-energy electrical current is delivered by intravascular catheters." Stedman's at 3. Radiofrequency is defined as "[r]adiant energy of a certain frequency range." *Id.* at 1622.

involving heavy physical exertion.  R. 245.  The VE testified that Claimant had acquired no skills in his past work that were transferable to either light or sedentary work.  *Id.*

The ALJ then posed a hypothetical to the VE regarding available jobs, and gave the following limitations:  Claimant's age, education, and work experience; capacity of lifting ten pounds on a frequent basis and twenty pounds on an occasional basis; ability to sit for six hours out of an eight-hour workday and to stand for six hours out of an eight-hour workday; capacity for only occasional kneeling, crawling, crouching, and use of stairs; inability to use ladders; and a need to avoid extreme temperatures, high humidity, hazardous machinery, and high concentrations of pulmonary irritants.  R. 246.  The VE testified that such a person would be unable to perform Claimant's past relevant work.  *Id.*

The VE did identify other jobs in the national economy for such a person.  *Id.*  He testified that such a person "would be limited to the light work group category," a category that includes jobs such as fast food worker, mail clerk, and cafeteria attendant.  *Id.*  The VE testified that there are about 50,000 fast food worker positions in the Chicago metropolitan area, about 6,000 mail clerk positions, and about 14,000 cafeteria attendant positions.  *Id.*

The ALJ then posed a second, slightly modified, hypothetical to the VE.  *Id.*  The second hypothetical described a person with the same limitations as in the first hypothetical, except with the capacity to lift only ten pounds instead of twenty, even on an occasional basis; the ability to sit for six hours out of an eight-hour workday; and the ability to stand for only two hours out of an eight-hour workday.  *Id.*  The VE testified that such a person would

be limited to sedentary work, and that the vocational grid rules—specifically, grid rule 201.14—would render Claimant disabled. R. 247-48.

The ALJ then posed a third hypothetical to the VE, and instructed the VE to ignore the second hypothetical. R. 248. The ALJ's third hypothetical contained all the same limitations as the first hypothetical, with one additional limitation: the person would need to have only incidental contact with the general public. *Id.* The VE testified that such a person would not be able to work as a fast food worker or a cafeteria attendant. *Id.* But the VE also testified that such a person could still work as a mail clerk, and would also be able to do small electrical accessories assembly and small product assembly. *Id.* The VE testified that there are about 14,000 small electrical accessories assembly jobs in the Chicago metropolitan area, and about 37,000 small product assembly jobs. *Id.*

## C. MEDICAL EVIDENCE – PHYSICAL HEALTH

### 1. Claimant's Cancer Treatment

The record contains extensive evidence regarding the course of treatment for Claimant's lung cancer. After Claimant's lung cancer was diagnosed in August 2001, R. 103, Claimant began visiting both a pulmonary specialist, Dr. Jacek H. Pieta, M.D., R. 168, 192, and an oncology specialist, Dr. Steven J. Leibach, M.D., R. 131-32. Dr. Peita performed multiple bronchoscopies[6] on Claimant, and continued to monitor Claimant's pulmonary functioning throughout his recovery. R. 159-97. Dr. Leibach, Claimant's oncologist, supervised Claimant's chemotherapy and radiation therapy, as well as his

---

[6] "Inspection of the interior of the tracheobronchial tree through a bronchoscope." Stedman's at 271.

recovery from surgery in November 2001 to remove his lung cancer. R. 122-55. Though Claimant visited both doctors at their respective offices, *e.g.* R. 122, 174, the surgical procedures and the administration of radiation/chemotherapy were all done at Alexian Brothers Medical Center in Elk Grove Village, Illinois, R. 97-99, 107-09.

Claimant last visited Dr. Leibach on June 4, 2004, approximately two and a half years after the removal of Claimant's lung cancer. R. 122. Dr. Leibach noted that Claimant was asymptomatic, that his weight and appetite were stable, and that Claimant only had "dyspnea[7] with extreme exertion." *Id.* Dr. Leibach also observed that Claimant had "[d]ecreased breath sounds" in his left lung. *Id.*

Claimant last visited Dr. Pieta on September 14, 2004, for a pulmonary functioning test. R. 172-74. As a result of the test, Dr. Peita concluded that Claimant had severe diffusion[8] defect, reduced lung volume, moderately severe parenchymal[9] restriction, and moderate obstructive airways disease. R. 174.

The remaining medical records relating to Claimant's cancer treatment are not relevant to Claimant's disability claim.

### 2. Claimant's Knee Problems

---

[7] "Shortness of breath, a subjective difficulty or distress in breathing, usually associated with disease of the heart or lungs; occurs normally during intense physical exertion or at high altitude." Stedman's at 601.

[8] "The random movement of molecules . . . toward a uniform distribution throughout the available volume . . . ." Stedman's at 539.

[9] Parenchyma is "the gas-exchanging portion [of the lung], excluding the radiographically visible blood vessels and bronchi." Stedman's at 1424-25.

Claimant visited an orthopedic doctor, Dr. Alvin M. Kanter, M.D., on September 13, 2004. R. 156. Claimant complained of pain in his left knee during this visit. *Id.* After an examination, Dr. Kanter noted that Claimant had crepitation[10] in the knee, but no abnormal buildup of fluid. *Id.* In addition, because Claimant had "a sense of the knee being bone on bone," Dr. Kanter took weight-bearing x-rays of Claimant's left knee. *Id.* The x-rays revealed "a reasonably good joint surface," and despite "some narrowing of the medial joint," a "reasonably good" overall alignment of the knee joint. *Id.* Dr. Kanter concluded that Claimant had "arthritis of the left knee," and injected cortisone into the knee to treat any inflammation. *Id.* Although he observed that Claimant's arthritis was "just one more problem that would disable him as a pipe fitter," Dr. Kanter also noted that Claimant's orthopedic problems, while "somewhat significant," were "not disabling." *Id.*

The record also indicates that Claimant injured his right knee in November 2005. R. 213. Dr. Linda Dew, M.D., examined Claimant on November 21, 2005, and concluded that he had a "[s]mall complete tear of the posterior horn of the medial meniscus," a low-grade injury of his anterior cruciate ligament, patella alta,[11] and "[m]ild chondromalacia patella[12] with a small patellofemoral joint effusion."[13] *Id.* Claimant was scheduled to undergo knee surgery on his right knee in December 2005. R. 216.

---

[10] "Noise or vibration produced by rubbing bone or irregular degenerated cartilage surfaces together as in arthritis and other conditions." Stedman's at 457.

[11] "[T]erm used to describe a somewhat more proximal position of the patella than anticipated when it is visualized on a lateral radiograph of the knee." Stedman's at 1441.

[12] "[A] softening of the articular cartilage of the patella." Stedman's at 369.

[13] Joint effusion is defined as "increased fluid in synovial cavity of a joint." Stedman's at 616.

### 3. State Agency Physician

On November 26, 2004, Claimant's medical records were reviewed by Dr. Virgilio Pilapil, M.D., R. 198-205, a State Agency medical consultant who did not examine Claimant, R. 12. Dr. Pilapil concluded that Claimant could perform light work that involved: no climbing ladders, ropes or scaffolds; only occasional kneeling, crouching and crawling; and no concentrated exposure to extreme cold, extreme heat, humidity or hazards. R. 198-205.

### D. THE ALJ'S DECISION – March 31, 2006

After conducting the hearing and reviewing the evidence, the ALJ found that Claimant was not disabled within the meaning of the Social Security Act. R. 8-14. Although he found that Claimant's impairments of history of lung cancer, paroxysmal supraventricular tachycardia, and arthritis of the knees were "severe," and that Claimant could not return to his previous work as a pipe fitter, the ALJ concluded that Claimant had the RFC to perform a full range of light work with only specific limitations. R. 14.

The ALJ evaluated Claimant's application for DIB under the five-step sequential analysis. *See infra*, Part II B (describing the disability standard of review). Under step one of the disability analysis, the ALJ noted that Claimant had not engaged in any substantial gainful activity since the alleged date of onset. R. 11. Under the second step, the ALJ found that Claimant's impairments were severe. *Id.* At the third step, however, the ALJ concluded that Claimant's impairments "do not singly or in combination meet or equal" any impairment listed under the Social Security Regulations. *Id.*

At step four of the disability analysis, the ALJ determined Claimant's RFC. To do so, the ALJ first summarized the medical evidence regarding Claimant's alleged impairments. R. 12. As to Claimant's history of lung cancer, the ALJ noted that at a doctor's visit three years after the removal of Claimant's lung cancer, Claimant was asymptomatic and "reported that he only experienced dyspnea with extreme exertion." *Id.* In addition, the ALJ noted that a pulmonary function test done in September 2004 "showed moderate obstructive airway disease with a moderate severe restriction." *Id.* As to Claimant's knee problems, the ALJ noted the opinion of Claimant's physician that Claimant's knee problems were "significant," but "not disabling." *Id.*

Next, the ALJ adopted the RFC determination made by the state medical consultant, Dr. Pilapil. *Id.* The ALJ found that Dr. Pilapil's assessment of Claimant's capabilities was "supported by the objective medical evidence." *Id.* Finally, the ALJ found that Claimant's testimony regarding his exertional abilities was "generally credible," and was also "supported by the objective medical evidence." R. 13. In particular, the ALJ noted Claimant's testimony that he "still experiences shortness of breath with exertion," and noted that his arthritis and history of supraventricular tachycardia "limits his ability to walk and stand." *Id.*

After evaluating the medical evidence, Dr. Pilapil's opinion, and Claimant's testimony, the ALJ concluded that Claimant retained the RFC to perform a full range of light exertional work with the following limitations: lifting and carrying objects up to twenty

pounds occasionally and ten pounds frequently; standing or walking for six hours out of an eight-hour workday; occasional crawling, crouching, and kneeling; and avoidance of temperature extremes, humidity, and unprotected elevations. *Id.* The ALJ then concluded, based on this RFC, that Claimant could not perform his past relevant work. *Id.*

At the final step of the disability analysis, the ALJ relied on vocational grid rule 202.14, 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.14, to find Claimant not disabled. R. 13. Specifically, the ALJ concluded that, based on Claimant's age, education, work experience, and ability to perform a full range of light work activity, grid rule 202.14 governed the ALJ's decision. *Id.* In addition, because the ALJ determined that Claimant's specific limitations "would not serve to significantly narrow his occupational base," the ALJ concluded that Claimant could still perform a significant number of jobs in the national economy, and was therefore "not disabled within the framework" of grid rule 202.14. *Id.*

## II. LEGAL STANDARDS

### A.   STANDARD OF REVIEW

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is

substantial evidence in the record to support the findings. *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). A mere scintilla of evidence is not enough. *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

While a reviewing court must conduct a "critical review" of the evidence before affirming the Commissioner's decision, *Clifford v. Apfel,* 227 F.3d 863, 869 (7th Cir. 2000), it may not re-evaluate the facts, re-weigh the evidence, or substitute its own judgment for that of the Commissioner, *Scott,* 297 F.3d at 593. Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence to support the findings. *Rice v. Barnhart*, 384 F.3d 363, 368-69 (7th Cir. 2004). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## B.     DISABILITY STANDARD

DIB is available to a claimant who can establish "disability" under the terms of Title II of the Social Security Act. *Rice*, 384 F.3d at 365.  An individual is "disabled" if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A disabled individual is eligible for DIB, however, only if he is under a disability.  42 U.S.C. § 423(a)(1)(D).  An individual is under a disability if he is unable to do his previous work and cannot, considering his age, education, and work experience, partake in any gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

To make this determination, the Commissioner must employ a five-step sequential analysis.  20 C.F.R. §§ 404.1520(a)-(f).  Under this process, the ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.  *White v. Barnhart,* 415 F.3d 654, 657 (7th Cir. 2005).

## III.  DISCUSSION

Claimant raises three issues for judicial review: (1) whether the ALJ erred in failing to discuss credible testimony from the Claimant that he could stand for thirty minutes without

experiencing too much discomfort; (2) whether the ALJ erred in failing to discuss the VE's testimony regarding the ALJ's second hypothetical; and (3) whether the ALJ erred in concluding that Claimant retained an RFC for light, as opposed to sedentary, work.

## A.    THE ALJ DID NOT ERR IN FAILING TO DISCUSS CLAIMANT'S SPECIFIC TESTIMONY REGARDING HIS ABILITY TO STAND

Claimant maintains that his testimony that he could stand for thirty minutes before experiencing discomfort is inconsistent with the ALJ's finding that he had the capacity to perform a full range of light work.  Claimant argues that the ALJ erred in failing to explain this inconsistency.  The Court disagrees.

In adjudicating a claim for DIB, an "ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). But an ALJ is not required to discuss every piece of testimony.  *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995).  Only "where the claimant presents considerable proof to counter the agency's position" must the ALJ "articulate, at some minimal level, his analysis of the evidence." *Id.*  Doing so allows the reviewing court to "trace the path of the ALJ's reasoning." *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996) (quoting *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993).

The ALJ has an additional duty specific to step four of the disability process.  *See* SSR 96-8p.  Namely, in determining the claimant's RFC, the ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."  SSR 96-8p.

Though Claimant's attorney argued at the disability benefits hearing that Claimant was disabled due to his breathing difficulties, R. 231, Claimant also testified regarding his ability to stand:

> Q:      Now you have any problems just standing in one spot?
>
> A:      I can stand for probably a half hour without having too much discomfort.
>
> Q:      And then you've got to sit?
>
> A:      Preferably.

R. 239.

Claimant's initial argument on appeal—that the ALJ should have discussed this testimony in his opinion—wrongly presumes that the testimony is either "considerable proof to counter," or "materially inconsistent with," the ALJ's RFC determination. First, because of the substantial amount of evidence supporting the ALJ's RFC determination, Claimant's testimony regarding his ability to stand does not constitute "considerable proof" that he is unable to stand or walk for six hours out of an eight-hour day. In determining Claimant's RFC, the ALJ relied on objective medical evidence, the subjective opinion of Claimant's orthopedist, the opinion of the state medical consultant, and Claimant's testimony regarding his pain and limitations. R. 12-13.

In contrast, the testimony upon which Claimant bases his argument takes up only five lines in the hearing transcript. R. 239. As the Commissioner points out in his brief, no doctor placed any limitations on Claimant's ability to stand, and no doctor found that

Claimant had limitations greater than those found by the ALJ.  There is simply no objective medical evidence to corroborate Claimant's testimony.  If anything, the medical evidence actually contradicts Claimant's testimony.  Claimant's orthopedist, Dr. Kanter, concluded that Claimant's arthritis was "not disabling."  R. 156.  Dr. Kanter apparently felt that Claimant's knee problems would not prevent him from performing a substantial range of work within the economy.  *See id.*  The ALJ agreed.  R. 13.  The Court finds that the ALJ's decision was supported by substantial evidence, and that Claimant's testimony was not "considerable proof" to counter the ALJ's decision.

Second, Claimant's testimony is not "materially inconsistent" with the ALJ's RFC determination.  An RFC for light work requires the ability to walk or stand for six hours out of an eight-hour day.  SSR 83-10.  When Claimant's attorney asked him whether he had problems standing in one place, Claimant responded: "I can stand for probably a half hour without having too much discomfort."  R. 239.  Claimant was then asked whether he had to sit down after a half-hour on his feet, to which he responded: "Preferably."  R. 239.  Based on this exchange, it was reasonable for the ALJ to conclude that Claimant does not need to sit after standing for thirty minutes—*i.e.*, that he can tolerate any discomfort he might experience from prolonged standing.

Third, this conclusion is also supported by Claimant's own testimony.  For example, Claimant testified that he could walk to and from the grocery store with his wife, and could also walk around the store.  R. 236.  He testified that this activity left him short of breath, but

he never indicated that it caused him any pain or discomfort in his legs, or required him to sit. *Id.* Thus, while Claimant might prefer to sit, he apparently is able to stand and walk for longer periods. Any inconsistency between Claimant's testimony and the ALJ's RFC determination is immaterial.

Finally, in discussing limitations imposed by his orthopedic surgeon following knee surgery in December 2005, the Claimant stated: "Well, I was told by my orthopedic, be very careful of how you operate stairs and twist because that's where the weakness comes in and that may have been probably the reason why I tore my meniscus to begin with." R. 241. There was no testimony that the doctors told him not to stand for more than thirty minutes or any other similar limitation.

In sum, it appears that the ALJ simply attributed more weight to the objective medical evidence, including the state medical consultant's RFC determination that Claimant could stand or walk for six hours in an eight-hour workday, than to Claimant's ambiguous testimony. The Court will not re-weigh any of this evidence on appeal. *Scott,* 297 F.3d at 593. Moreover, because the Court can trace the ALJ's reasoning on this issue, the ALJ's failure to discuss Claimant's specific testimony does not require a remand. *See Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

**B.      THE ALJ DID NOT ERR IN FAILING TO DISCUSS THE VE'S TESTIMONY**

Claimant also argues that the ALJ ignored the VE's testimony regarding the ALJ's second hypothetical. Specifically, Claimant asserts that because the ALJ's second hypothetical was a better approximation of his limitations, the ALJ should have addressed the VE's opinion regarding the number of jobs for such a person. The Court disagrees.

In this case, the VE's testimony regarding the second hypothetical was simply irrelevant. During the hearing, the ALJ posed three hypotheticals to the VE, each corresponding to a different set of limitations. R. 246-48. The VE's testimony as to the number of jobs available to persons with each set of limitations was relevant only if the ALJ also concluded that Claimant had that set of limitations. The ALJ's second hypothetical described a person who could walk or stand for only two hours out of an eight-hour workday. R. 246. While both Claimant and the VE are correct that such a person would be limited to sedentary work, SSR 83-10, the ALJ ultimately concluded that Claimant was capable of standing or walking for six hours out of an eight-hour workday, R. 13. The VE's testimony regarding the second hypothetical was therefore irrelevant. The Court thus finds that the ALJ did not err by failing to discuss the VE's testimony in his opinion.

## C. VOCATIONAL GRID RULE 201.14 DID NOT GOVERN THE ALJ'S DISABILITY DECISION

Claimant's final claim arises out of his previous two arguments. Specifically, Claimant argues that the ALJ's second hypothetical, which presented a person limited to sedentary work, was based on the testimony that Claimant could stand for thirty minutes at

a time without discomfort.  Because the ALJ and this Court have rejected Claimant's first two arguments, this argument also fails without the need for further discussion.

## IV.  CONCLUSION

For the reasons set forth in this opinion, Claimant's motion to reverse the final decision of the Commissioner is denied, the Commissioner's cross-motion for summary judgment is granted, and the Commissioner's disability decision is affirmed.

SO ORDERED THIS 9th DAY OF MAY, 2007.


_Morton Denlow_

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**




**Copies mailed to:**


George G. Weber
Attorney at Law
403 W. Galena Blvd.
Aurora, Illinois 60506

Counsel for Plaintiff

Samuel D. Brooks
Assistant United States Attorney
219 S. Dearborn St.
Chicago, Illinois 60604


Karen Sayon
Assistant Regional Counsel
Social Security Administration
200 W. Adams St., Ste. 3000

Chicago, Illinois 60606

Counsel for Defendant